740 F.2d 566
 ILLINOIS BELL TELEPHONE COMPANY, Plaintiff-Appellee,
v.
ILLINOIS COMMERCE COMMISSION, Philip R. O'Connor, Andrew
Barrett, Daniel Rosenblum, Charles Stalon and Ruth
Kretschmer, Defendants-Appellants.
 No. 83-2421.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 3, 1984.
Decided July 27, 1984.
 
 E. King Poor, Sp. Asst. Atty. Gen., Chicago, Ill., for plaintiff-appellee.
 Henry L. Mason, III, Sidley & Austin, Chicago, Ill., for defendants-appellants.
 Before WOOD and FLAUM, Circuit Judges, and SWYGERT, Senior Circuit Judge.
 FLAUM, Circuit Judge.
 
 
 1
 The district court in this case granted a preliminary injunction ordering appellant Illinois Commerce Commission (Commission) both to conform to an order of the Federal Communications Commission (FCC) and to allow appellee Illinois Bell Telephone Company to place into effect a rate increase for intrastate service. This appeal raises two issues: whether the district court should have stayed its proceedings pending the outcome of a state court suit between the parties; and whether the district court found the degree of injury required to grant a preliminary injunction. For the reasons stated below, we affirm the judgment of the district court.
 
 
 2
 * Illinois Bell is a public utility that provides both intrastate and interstate telephone service. The Commission has authority to set rates for intrastate telephone service. The FCC has authority to set rates for interstate telephone service.
 
 
 3
 Each agency sets rates based in part on the amount of Illinois Bell's expenses, investment, and taxes. Many of Illinois Bell's facilities are used in providing both types of service. Through a method called "separations," its total expenses, investment, and taxes are allocated between the intrastate and interstate portions of its business. The FCC has final authority to prescribe uniform separations procedures.[1] 47 U.S.C. Sec. 410(c). The FCC has adopted separations procedures, which are set forth in a "Separations Manual." Among other things, the Manual prescribes procedures for separating "Non-Traffic Sensitive" (NTS) facilities based on a "Subscriber Plant Factor" (SPF). This factor currently is based on the relative proportion of interstate use to total use, developed through studies conducted during a "representative period."
 
 
 4
 On February 26, 1982, the FCC ordered an immediate freeze of the SPF at actual 1981 levels pending a complete revision of the Separations Manual. In 1981, Illinois Bell had calculated its SPF on the basis of five-business-day studies.
 
 
 5
 At the time the FCC entered its order, Illinois Bell had a rate increase pending before the Commission. On May 26, 1982, the Commission issued a decision. The Commission granted Illinois Bell an annual rate increase. However, in setting the rates, the Commission rejected the use of the SPF based on five-day studies and instead applied an SPF based on seven-calendar-day studies. The effect of this was to reduce the requested rate increase by more than $34 million. The Commission did add an unidentified amount through an offsetting increase in interstate rates ("risk factor") in recognition of the risk that the $34 million might not be recovered in the separations process.
 
 
 6
 Pursuant to the Illinois Public Utilities Act, Illinois Bell appealed the Commission's order to the Circuit Court of Sangamon County, Illinois.[2] The parties briefed the issues and on May 24, 1983, the circuit court heard oral argument.
 
 
 7
 On May 27, 1983, Illinois Bell filed a proposed tariff with the Commission, seeking to raise its rates based solely on the separations issue. On June 22, 1983, the Commission suspended the proposed increase.
 
 
 8
 Illinois Bell had also sought another general rate increase. On July 13, 1983, the Commission granted a portion of the increase. The Commission continued to use the seven-day SPF in its calculations, thus reducing the amount of the requested increase. The Commission did not include any amount as a "risk factor" that the revenue would not be recovered in the separations process.
 
 
 9
 On July 14, 1983, Illinois Bell filed suit in federal district court in the Northern District of Illinois against the Commission and its members. Illinois Bell sought a preliminary injunction to enjoin the Commission from ignoring the separations procedure mandated by the FCC's freeze order and to allow it to place into effect its higher tariff. At that time, the state circuit court had not issued a decision in the case pending before it.
 
 
 10
 The district court granted the preliminary injunction. The court found that the Commission's use of the seven-day study was causing Illinois Bell to suffer a revenue shortfall of more than $95,000 a day, which Illinois Bell would never be able to recover, and that thus Illinois Bell was suffering irreparable harm. The court concluded that abstention and comity did not preclude it from exercising its jurisdiction. The court also concluded that Illinois Bell had shown a likelihood of success on the issue of whether the Commission's actions failed to conform to the FCC's freeze order. The court ordered the Commission to obey the FCC's freeze order and to allow Illinois Bell to increase its intrastate rates. The order provides that Illinois Bell must refund the money collected under the injunction, with interest, if it is finally determined that the injunction is improper. The Commission appealed.
 
 
 11
 Subsequent to the docketing of the appeal in this court, the state circuit court issued a decision, remanding the case to the Commission with instructions to receive certain late-filed evidence and to enter a new order based upon all the evidence in the case. The state court retained jurisdiction over the case.[3]
 
 
 12
 On appeal, the Commission raises two issues. First, it argues that the district court should not have exercised jurisdiction because of the pending state court suit. Under the principles announced in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), a federal court should decline jurisdiction because of a pending state court suit only in exceptional circumstances. According to the Commission, this case involves exceptional circumstances both because of the risk of forum-shopping and because of the policies underlying the Johnson Act, 28 U.S.C. Sec. 1342 (1982), which limits federal court jurisdiction over state utility rate cases. Second, the Commission argues that the district court should have denied the injunction. On this issue, the Commission challenges only the district court's finding of injury. It contends that injunctive relief from rate orders is warranted only where the utility can show that its injury amounts to confiscation of its property, and Illinois Bell has made no clear showing of confiscation. It further argues that Illinois Bell has not shown even irreparable injury. Thus, the Commission maintains, the injunction was improper.
 
 
 13
 In response, Illinois Bell argues that the district court properly exercised its jurisdiction. It argues that the policies underlying the Johnson Act are not applicable, and that there are no other exceptional circumstances justifying a stay of its federal suit. Illinois Bell also argues that because a statute gives it the right to injunctive relief, it need not show irreparable injury, and that in any event it proved irreparable injury.
 
 II
 
 14
 The decision whether to stay proceedings because of pending state litigation is committed to the discretion of the district court and can be reversed only for abuse of discretion. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983).
 
 
 15
 Where a district court properly has subject matter jurisdiction in a case, it has a "virtually unflagging obligation" to exercise that jurisdiction. Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S.Ct. at 936. The fact that a parallel action between the parties is pending in state court is no bar to federal proceedings. Id.[4] However, parallel actions may lead to what this court has termed "a grand waste of efforts by both the courts and parties." Microsoftware Computer Systems v. Ontel Corp., 686 F.2d 531, 538 (7th Cir.1982). In Colorado River, the Supreme Court recognized that under exceptional circumstances, a stay of the federal proceedings may be appropriate, based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " Colorado River Water Conservation District v. United States, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).
 
 
 16
 A number of considerations have been identified as relevant in determining whether to stay federal proceedings under the Colorado River doctrine. These include the convenience of the forum, the avoidance of piecemeal litigation, the adequacy of the state court proceeding, the presence of federal-law issues, and the extent of progress in the state and federal proceedings. See Arizona v. San Carlos Apache Tribe, --- U.S. ----, 103 S.Ct. 3201, 3215, 77 L.Ed.2d 837 (1983); Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S.Ct. at 939-43; Colorado River Water Conservation District v. United States, 424 U.S. at 818-19, 96 S.Ct. at 1246-1247. However, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S.Ct. at 927.
 
 
 17
 Two considerations are particularly important in this case. First, the federal court suit raises issues of federal law. The essential inquiry in the case below is whether the FCC's order freezing the SPF at actual 1981 levels preempted the Commission from using a different SPF in setting rates. Federal law gives the FCC the authority to enter such orders, see 47 U.S.C. Sec. 410(c), and gives federal district courts jurisdiction to enforce such orders, see 47 U.S.C. Sec. 401(b). The federal Constitution provides that federal law will preempt state law if the latter is inconsistent. U.S. Const. Art. VI, cl. 2. The Supreme Court recently has held that "the presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S.Ct. at 942.
 
 
 18
 The second important consideration is the relative progress of the state and federal suits. Here, at the time the federal suit was filed, the state suit had been filed for over a year, was briefed and argued, and was awaiting decision. However, the Supreme Court has cautioned that we should not look merely to the dates on which the two actions were filed, but instead should act in a "pragmatic, flexible manner with a view to the realities of the case at hand." Id. at 941. Ordinarily, it would be appropriate for a reviewing court to determine the propriety of a district court's decision whether to stay a suit on the basis of the facts as they appeared at the time the motion to stay was filed. See Arizona v. San Carlos Apache Tribe, 103 S.Ct. at 3215; Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S.Ct. at 940. The purpose of the Colorado River doctrine, however, is the conservation of state and federal judicial resources. Where the progress of the state suit has changed significantly since the motion to stay the federal suit was filed, it would defeat that purpose to ignore the subsequent events. Thus, this court has looked to facts occurring in state court subsequent to the motion to stay in federal court. See Board of Education v. Bosworth, 713 F.2d 1316, 1321-22 (7th Cir.1983); Evans Transportation Co. v. Scullin Steel Co., 693 F.2d 715, 719-20 (7th Cir.1982).[5] Here, the state court subsequently remanded the case to the Commission with instructions to enter a new order; once the Commission enters its final order, the parties must return to the state circuit court. Thus, the state court suit essentially is nowhere near resolution. Requiring a stay of the federal suit now would not promote judicial economy. We reject the Commission's argument that by pursuing its state court suit for over a year, Illinois Bell has "elected" and "bargained for" state court resolution of its suit and that its federal suit amounts to forum-shopping. This court has held that a district court need not stay its proceedings where the plaintiff previously had filed an identical suit in state court in the state where the district court sits. Voktas, Inc. v. Central Soya Co., 689 F.2d 103, 107-08 (7th Cir.1982). Although the court in Voktas expressly recognized that granting a stay in such a case merely would force the plaintiff to choose its forum, it ruled that to force such a choice would fail to recognize fully the unflagging obligation of the district court to exercise its jurisdiction.[6] Id. at 108. Moreover, Voktas was purely a diversity suit. Where, as here, the plaintiff raises issues of federal law, the case for permitting later resort to a federal forum is even more persuasive.
 
 
 19
 The Commission urges that the district court should have stayed its proceedings based on the policy of comity underlying the Johnson Act, 28 U.S.C. Sec. 1342.[7] Ordinarily, the policy underlying a relevant federal statute is an important factor in determining whether to stay a federal suit in deference to pending state litigation. Colorado River Water Conservation District v. United States, 424 U.S. at 819, 96 S.Ct. at 1247; Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S.Ct. at 940. However, the Supreme Court has stated expressly that the Colorado River doctrine rests "not on considerations of state-federal comity" but rather on concerns of wise judicial administration. Id. at 936 (citing Colorado River Water Conservation District v. United States, 424 U.S. at 817, 96 S.Ct. at 1246). Thus, comity is not relevant to a decision whether to stay the federal suit.
 
 
 20
 Thus, we conclude that the district court did not abuse its discretion in determining not to stay the suit.
 
 III
 
 21
 Under traditional principles of equity, to receive a preliminary injunction a plaintiff must prove that it will suffer irreparable harm if the injunction is denied. However, where the plaintiff seeks an injunction to prevent the violation of a federal statute that specifically provides for injunctive relief, it need not show irreparable harm. In re Chicago, Milwaukee, St. Paul and Pacific Railroad Co., 738 F.2d 209, 212 - 213 (7th Cir.1984) (permanent injunction); Trailer Train Co. v. State Board of Equalization, 697 F.2d 860, 868-69 (9th Cir.) (preliminary injunction), cert. denied, --- U.S. ----, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983); SEC v. Holschuh, 694 F.2d 130, 144 (7th Cir.1982); Atchison, Topeka & Santa Fe Railway Co. v. Lennen, 640 F.2d 255, 259-60 (10th Cir.1981). This rule has been applied to private plaintiffs seeking an injunction under 47 U.S.C. Sec. 401(b). South Central Bell Telephone Co. v. Louisiana Public Service Commission, 570 F.Supp. 227 (M.D.La.1983); New England Telephone & Telegraph Co. v. Public Utilities Commission, 570 F.Supp. 1558 (D.Maine 1983).
 
 
 22
 Under the statute, the court only need find that "the order was regularly made and duly served, ... the [defendant] is in disobedience of the same," and the plaintiff is "injured." 47 U.S.C. Sec. 401(b). Here, the court made the necessary findings. The court found that Illinois Bell would suffer irreparable injury if the injunction were denied. We need not decide whether the injury would be irreparable.[8] It is clear that Illinois Bell proved injury--the loss of over $95,000 a day, which it would not be able to recoup. Illinois law does not permit a public utility to recoup losses retroactively. Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co., 2 Ill.2d 205, 117 N.E.2d 774 (1954). Thus, the district court properly granted the preliminary injunction.
 
 
 
 [1]
 Under 47 U.S.C. Sec. 410(c), the FCC refers separations issues to a Federal-State Joint Board. The Joint Board prepares a recommended decision for the FCC
 
 
 [2]
 Ill.Rev.Stat. ch. 111 2/3, Sec. 72 (1982)
 
 
 [3]
 On March 2, 1984, the FCC issued a decision and order on the separations issue. It ruled that it would adopt a seven-calendar-day study. It also ordered that the "freeze" of SPF be continued through 1985
 
 
 [4]
 The parties disagree as to whether the federal court suit is identical to the state court suit. We find it unnecessary to resolve this dispute. We assume for purposes of our analysis that the two suits raise identical issues. If the two suits raise different issues, the case against staying the federal suit would be even stronger
 
 
 [5]
 Cf. United States v. Adair, 723 F.2d 1394, 1405 (9th Cir.1983) ("the institutional concerns of 'wise judicial administration' must not be blind to the overall course of a particular piece of litigation"), cert. denied, --- U.S. ----, 104 S.Ct. 3536, 81 L.Ed.2d --- (1984). In Adair, after denying the motion to dismiss, the federal district court tried the case and issued a decision on the merits. We need not decide whether subsequent events in the federal court suit should be relevant in determining whether the motion to stay should have been granted
 
 
 [6]
 In Voktas, the federal suit was filed only four months after the state suit was filed, whereas here there was a delay of over a year before the federal suit was filed. We do not regard this difference as controlling
 
 
 [7]
 The parties agree that the Johnson Act itself does not bar this suit
 
 
 [8]
 We note that under Illinois law, a public utility's inability to recoup its losses retroactively may constitute irreparable injury. See Brink's, Inc. v. ICC, 79 Ill.App.3d 275, 34 Ill.Dec. 621, 398 N.E.2d 296 (1979)