**BETHLEHEM CONTRACTING COMPANY, a Corporation of the Commonwealth of Pennsylvania, Plaintiff-Appellant,**

v.

**LEHRER/McGOVERN, INC., a Corporation of the State of New York, Lehrer/McGovern, Inc., as Agent for Timko Contracting Corporation, a Corporation of the State of New York, and Paul Milstein, Individually, Polito Enterprises, Inc., a Corporation of the State of New York, and Gem Steel Erectors, Inc., a Corporation of the State of New York, Defendants-Appellees.**

No. 1325, Docket 86–7179.

United States Court of Appeals, Second Circuit.

Argued May 12, 1986.

Decided Sept. 15, 1986.

William W. Lanigan, New York City (Lanigan, O'Connell & Chazin, New York City, of counsel), for plaintiff-appellant.

Mark E. Klein, New York City (Joseph L. Forstadt, Linda S. Riefberg, Stroock & Stroock & Lavan, New York City, of counsel), for defendants-appellees Timko Contracting Corp. and Paul Milstein.

Before MANSFIELD, CARDAMONE, and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff Bethlehem Contracting Company ("Bethlehem") appeals from Judge Bramwell's dismissal of its diversity action. He based this dismissal upon the "exceptional circumstances" doctrine governing the exercise of concurrent federal and state jurisdiction articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and elaborated upon in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The underlying dispute arose out of a construction project converting the former Biltmore Hotel in New York City into an office building known as Bank of America Plaza. Bethlehem became involved in the project in January 1982, when it entered into a contract with Lehrer/McGovern, Inc. ("Lehrer/McGovern"), the project's construction manager. Lehrer/McGovern was acting as agent for Timko Contracting Corporation ("Timko"), the project's general contractor. Bethlehem agreed to provide all labor, equipment, supervision, and administration necessary to construct a structural steel and metal deck for the project. Bethlehem subsequently entered into subcontracts with Gem Steel Erectors, Inc. ("Gem") to provide for the erection of the deck, and with Gem's affiliate, Polito Enterprises, Inc. ("Polito"), to supply certain materials and accessories.

In late 1982, Gem allegedly threatened to withdraw its employees from the project, claiming that Bethlehem was not paying monies due under its subcontract. In order to avoid a work stoppage, Timko and Paul Milstein, Timko's president and director, arranged to make progress payments directly to Gem. This arrangement is the basis of the present action in which Bethlehem alleges, *inter alia*, breach of the contract between itself and Timko, and tortious interference by Milstein with the subcontract between Bethlehem and Gem.

Prior to the present action, however, there was a flurry of related activity in New York state court. In October 1983, Gem and Polito filed notices of mechanic's liens in New York County against the construction project. In early 1984, the owner of the property, Builtland Partners ("Builtland"), petitioned in Supreme Court, New York County, to discharge the notices of lien. Meanwhile, on March 19, 1984, Gem and Polito commenced an action in the same court for foreclosure of the liens and for breach of contract in connection with the work, labor, and supplies they had provided at the project. The fourteen defendants in the state litigation include Builtland, Timko, and Bethlehem, as well as eleven other entities that claim an interest in or liens on the construction project property. Milstein, a partner in Builtland, is not a party to the state court action.

After the New York Supreme Court granted Builtland's petition and discharged the notices of lien as untimely and defective, Gem and Polito proposed a stipulated dismissal of all parties that had been named as defendants in the state litigation solely with respect to the lien foreclosure causes of action. Although Builtland and Timko agreed to this proposal, no further action was taken. Instead, several months later, counsel for Gem and Polito and counsel for Bethlehem jointly requested that Builtland and Timko stipulate to the dismissal of the state court action and agree to be sued by Bethlehem in federal court. This request was rejected. Each side now accuses the other of conspiring to keep the state court action dormant. Whatever the cause, there is no dispute about the result: none of the defendants has answered the state complaint, and no party has engaged in formal discovery.

Bethlehem commenced the present action in the Eastern District against Lehrer/McGovern, Milstein, Gem, and Polito on July 9, 1985; Timko was added as a defendant on August 22, 1985. Jurisdiction was grounded on diversity of citizenship. In October 1985, all parties to the action stipulated to the dismissal of Lehrer/McGovern on the ground that it was an agent for a disclosed principal and therefore had no liability for the claims asserted. During

the same month, Timko and Milstein moved to dismiss the entire action on the ground that a pending state court action raised substantially identical issues. Holding that "this case falls within the framework of the exceptional circumstances test," the district court dismissed the complaint. Decision and Order (filed Nov. 25, 1985) at 6. We reverse.

■ Where, as here, a federal court properly has subject matter jurisdiction, it has a "virtually unflagging obligation" to exercise that jurisdiction, even if an action concerning the same matter is pending in state court. *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. at 1246. This obligation is subject to very limited exceptions, one of which is relevant to this case. A district court may decline to exercise its jurisdiction in "exceptional circumstances" based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). *See also Cone*, 460 U.S. at 14–16, 103 S.Ct. at 936–37; *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 360–63 (2d Cir.1985); *Giardina v. Fontana*, 733 F.2d 1047, 1052–53 (2d Cir.1984); *Levy v. Lewis*, 635 F.2d 960, 965–67 (2d Cir.1980).

*Colorado River* identified several factors to be considered in applying the exceptional circumstances test: the assumption by either court of jurisdiction over any res or property, the inconvenience of the federal forum, the avoidance of piecemeal litigation, and the order in which jurisdiction was obtained. 424 U.S. at 818, 96 S.Ct. at 1246–47. *Cone* elaborated upon this test and added two new considerations: whether state or federal law supplies the rule of decision, and whether the state court proceeding will adequately protect the rights

of the party seeking to invoke federal jurisdiction. 460 U.S. at 23–27, 103 S.Ct. at 941–43. In both cases the Court warned, however, that the determination whether to defer to a state court under the exceptional circumstances test "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction.*" *Id.* at 16, 103 S.Ct. at 937 (emphasis added); *see also Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47 ("No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.").

■ The decision whether to stay or dismiss a federal suit under the *Colorado River* doctrine is committed to the discretion of the district court.[1] *Cone*, 460 U.S. at 19, 103 S.Ct. at 938. We believe that in the present case the district court simply gave no weight to the heavy presumption favoring the exercise of jurisdiction and thereby abused its discretion in dismissing Bethlehem's suit.

The district court stated that in determining the existence of exceptional circumstances, it "must consider" avoidance of piecemeal litigation, the order in which the courts obtained jurisdiction, whether state or federal law supplies the rule of decision, and whether the state court proceedings will adequately protect the rights of the party seeking to invoke federal jurisdiction. Decision and Order at 4. It thus failed to consider the first two factors enunciated in *Colorado River*, both of which militate against dismissal because, the liens having been discharged, neither court presently has jurisdiction over any res or property, and the federal forum is not less conve-

---

1. *Cone* rejected any distinction between a stay of federal litigation and an outright dismissal for the purposes of the exceptional circumstances test. 460 U.S. at 27–28, 103 S.Ct. at 942–43. *See, e.g., Telesco*, 765 F.2d at 360–63 (applying exceptional circumstances test to affirm dismis-sal of a federal action); *Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 740 F.2d 566, 569–71 (7th Cir.1984) (applying exceptional circumstances test to affirm determination not to stay a federal action).

nient than the state forum. Although federal courts are not bound to give weight to each factor—indeed, we are warned by *Cone* to *avoid* applying a "mechanical checklist," 460 U.S. at 16, 103 S.Ct. at 937, *see, e.g., Telesco,* 765 F.2d at 362–63 (emphasizing four exceptional circumstances factors); *Illinois Bell Telephone Co. v. Illinois Commerce Commission,* 740 F.2d 566, 570–71 (7th Cir.1984) (discussing two exceptional circumstances "particularly important in this case")—the district court's failure to consider factors weighing against dismissal had the result of turning the presumption in favor of exercising jurisdiction on its head.

Even considering only the factors relied on by the district court, that presumption precludes dismissal. First, allowing the federal action to proceed does not necessarily create piecemeal litigation that might be avoided by dismissal. Although there is similarity of parties, Milstein is named as an individual defendant only in the federal suit, while eleven of the fourteen defendants in state court are unique to that action. And although the disputes in both the state and federal forums stem from the Bank of America Plaza construction project, Bethlehem's federal suit raises a cause of action in tort against Milstein that has no counterpart in the state litigation.

With regard to the chronological order in which the courts obtained jurisdiction, *Cone* emphasized that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." 460 U.S. at 21, 103 S.Ct. at 927. *See also Illinois Bell,* 740 F.2d at 570 (court should consider "relative progress" of state and federal suits in determining whether to stay federal action). To date, the relevant state court litigation has consisted of little more than the filing of the complaint. No party has answered or otherwise pleaded. There has been no formal discovery. In the present case, in contrast,

defendants Gem and Polito filed an answer, a counterclaim, and a crossclaim, and submitted interrogatories to all parties. Bethlehem submitted interrogatories to all defendants, received responses thereto, and served notice of Milstein's deposition. Given the "relative progress" of the federal action, the order in which jurisdiction was obtained is not a ground for dismissal of the action. This case is, therefore, unlike that in *Telesco,* where the state suit had gone through "substantial costly discovery involving a $122,000 audit of the corporation, and several interlocutory decisions." 765 F.2d at 363.

Further, the fact that federal substantive law does not govern this case is of little weight. State law provides the rule of decision in all diversity cases,[2] and the source-of-law factor "has more influence when a federal rule of decision is involved; only 'in some rare circumstances [may] the presence of state law issues ... weigh in favor of ... surrender' of federal jurisdiction." *Giardina,* 733 F.2d at 1053 (quoting *Cone,* 460 U.S. at 26, 103 S.Ct. at 942). No such rare circumstances are present in this case. This is not a case like *Telesco,* 765 F.2d at 363, where the presence of a "novel state law theory" was a factor in the finding of exceptional circumstances. In contrast, Bethlehem's breach of contract and tortious interference claims present no novel or unique issues of law.

Finally, the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action. This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction. It is thus of little weight here. Moreover, the premise of adequate protection in the state courts is somewhat undermined by the fact that Paul Milstein, President of Timko and a general partner of Builtland, is a defendant

---

**2.** Bethlehem asserts for the first time on appeal that Pennsylvania law, rather than New York law, governs its breach of contract claims. Our assessment of the significance of the source-of-

law factor in this case is not affected by whether the contract is governed by New York or Pennsylvania law.

in the federal action but not in the state suit.

We conclude that the district court abused its discretion in dismissing this action. The judgment is reversed and the case is remanded for further proceedings.