99 F.3d 72
 Terrill Hill BURNETT, Plaintiff-Appellant-Cross-Appellee,
v.
PHYSICIAN'S ONLINE, INC., a Delaware Corp.; Christian
Mayaud, M.D., an individual; William J.
Greenberg, M.D., an individual; Steven
Hochberg, an individual,
Defendants-Appellees-
Cross-Appellants.
 Nos. 127, 573, Docket 96-7222(L), 96-7278(XAP).
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 3, 1996.
Decided Oct. 25, 1996.
 
 Frederick R. Dettmer, New York City (Karen M. Streisfeld, Law Office of Frederick R. Dettmer, of counsel), for Plaintiff-Appellant-Cross-Appellee.
 Edward H. Pomeranz, New York City (Simon Miller, Graubard Mollen & Miller, of counsel), for Defendants-Appellees-Cross-Appellants.
 Before: McLAUGHLIN and JACOBS, Circuit Judges, and KELLEHER,* District Judge.
 JACOBS, Circuit Judge:
 
 
 1
 In two competing lawsuits, Physician's Online, Inc. ("POL") is embroiled in disputes with its former executive, Terrill Hill Burnett, over her employment, discharge, and removal from POL's board of directors, and over a stockholder's agreement that they signed in conjunction with her employment and her investment in the company. POL is the plaintiff in an action pending (and swiftly proceeding) in the New York Supreme Court, New York County, commenced by service of a summons (only) in the summer of 1993. Burnett is the plaintiff in a federal action commenced in October 1993, originally in the Central District of California. POL served its complaint in the state court the day after the federal action was filed. Burnett appeals from an order of the United States District Court for the Southern District of New York (Griesa, C.J.), abstaining pursuant to the Colorado River doctrine, see Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and dismissing Burnett's federal action against POL without prejudice to any party's right to reopen the action at the conclusion of the state court proceeding.
 
 
 2
 POL, evidently concerned that the terms of the abstention order may toll the statute of limitations as to any hitherto unpleaded claim that Burnett may be inspired to assert in the future, cross-appeals on the ground that the district court should have stayed the federal action instead of dismissing it. Also on cross-appeal, POL argues that, even if the district court abused its discretion in granting POL's motion to abstain, the district court should have granted POL's alternative motion to dismiss Burnett's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), and that now on appeal we should exercise our supervisory power to direct entry of judgment in POL's favor on that motion.
 
 
 3
 Because the district court did not perform the analysis required by Colorado River, we vacate the district court's judgment and order of abstention, and remand for further proceedings in accordance with this opinion.
 
 BACKGROUND
 
 4
 POL, a Delaware corporation, is an online computer network for medical professionals formed in April of 1992 by Christian Mayaud and William Greenberg. On January 22, 1993, POL entered into a Stockholders' Agreement with Terrill Hill Burnett, which was signed as well by Mayaud, Greenberg, and Steven Hochberg (the "Agreement"). Pursuant to the Agreement, Burnett became employed by POL as its Chief Marketing Officer; she also became an officer and director of POL for "so long as [she was] willing to serve and [her] employment [was] not terminated." The Agreement provided that Burnett could buy 720 shares of POL stock at $10/share. A later stock split brought Burnett's total shareholding to 1440.
 
 
 5
 On June 15, 1993, POL terminated Burnett as an officer and employee of POL. The reasons for Burnett's termination, and their sufficiency, are hotly disputed by the parties.
 
 
 6
 POL commenced an action against Burnett in the New York Supreme Court (the "State Court action") by filing a summons with notice in that court on July 22, 1993. Burnett states that she was served on August 30, 1993. POL subsequently filed its complaint in that action on October 20, 1993. POL's complaint sought a declaration that: 1) POL did elect--and was entitled to elect--to repurchase some of Burnett's shares of POL stock by reason of Burnett's ineffective job performance, and pursuant to certain terms of the Agreement; 2) POL's termination of Burnett's employment was valid under the terms of the Agreement and POL's by-laws; 3) Burnett was validly removed from the POL Board of Directors pursuant to the Agreement and the by-laws; and 4) POL was entitled to the return of certain of its property which Burnett was wrongfully refusing to return. POL also sought specific enforcement of POL's election to repurchase certain of Burnett's shares, specific enforcement of Burnett's obligation to return certain of POL's property, and damages suffered by reason of Burnett's fraud and intentional misrepresentation.[1] Although the parties were diverse and the amount in controversy was more than $50,000, Burnett at no time sought to remove this state court action to federal court.
 
 
 7
 On October 19, 1993, Burnett commenced suit against POL, Mayaud, Greenberg, and Hochberg in federal district court in the Central District of California (the "Federal Action"). On November 3, 1993, Burnett filed a First Amended Complaint, alleging: 1) violation of § 12(a)(1) of the Securities Act of 1933; 2) untrue statements or omissions in violation of § 12(a)(2) of the Securities Act of 1933; 3) securities fraud under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5; 4) intentional misrepresentation in the sale of the POL stock to Burnett; 5) breach of fiduciary duty; 6) negligent misrepresentation in the sale of the stock; 7) breach of employment agreement by improper termination;[2] 8) quantum meruit; and 9) gender-based discrimination under the California Fair Employment and Housing Act.
 
 
 8
 On December 15, 1993, Mayaud--as President and CEO of POL--sent a letter to Burnett, treating the allegations of her federal complaint as an offer to rescind her acquisition of POL shares, and accepting that offer:
 
 
 9
 Your complaint and amended complaint each include claims brought under Section 12 of [the 1933 Securities Act]. Pursuant to your 1933 Act claims, you seek rescission of a purchase of POL stock which you made on or about February 11, 1993....
 
 
 10
 POL understands that the filing and service of your summons and complaint seeking rescission under Section 12 of the 1933 Act constitutes a tender by you of 1440 POL shares....
 
 
 11
 POL further understands that POL is entitled to accept your tender of the 1440 POL shares in exchange for the return of the consideration which you paid to POL, plus interest.
 
 
 12
 As Chief Executive Officer of POL, and on behalf of POL, I accept your tender of 1440 POL shares in exchange for the consideration which you paid for such shares, plus interest.... POL's records reflect that the consideration paid by you amounts to $7,200. POL, in all events, will pay to you the amount of consideration which you paid for the 1440 shares of POL stock (either as an amount agreed upon between POL and you or, absent such an agreement, as determined by the appropriate court), plus interest.
 
 
 13
 * * * * * *
 
 
 14
 Should you refuse to make physical delivery of the shares, we will ask the appropriate court to declare (a) your obligation to deliver such shares to POL and (b) the amount of consideration, plus interest, which POL is to return to you.
 
 
 15
 That same day, POL amended its State Court Complaint to add a claim seeking specific enforcement of the agreement to rescind, as characterized in Mayaud's letter. Burnett responded by letter on December 22, 1993, rejecting the "offer" to purchase the shares. She demanded--and continues to demand--consideration of over $1 million for the stock. (Burnett did, however, refer in her letter to the "rescission claim" in her complaint.)On December 16, 1993, POL moved in California to dismiss Burnett's amended federal complaint in its entirety or, in the alternative, to transfer the action to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). The Central District of California (Kenyon, J.) transferred the action. On April 15, 1994, the action--along with the undecided motion to dismiss--was received by the Southern District of New York, and assigned to Chief Judge Griesa.
 
 
 16
 On March 25, 1994, POL moved for summary judgment in the state court action, seeking specific enforcement of the rescission announced in the Mayaud letter. By Memorandum Decision dated September 27, 1994, the New York Supreme Court (Schackman, J.) granted POL's motion "to the extent of declaring that [Burnett] is entitled to $7,200, plus interest, upon the delivery to [POL] of her 1,440 shares of POL stock." The Appellate Division affirmed this decision, with the important clarification that Burnett was obligated to make delivery of her POL shares in exchange for that consideration. Physicians' Online, Inc. v. Burnett, 216 A.D.2d 244, 628 N.Y.S.2d 684 (1st Dep't 1995). The Court of Appeals denied Burnett's request for leave to appeal. Physicians' Online, Inc. v. Burnett, 87 N.Y.2d 802, 638 N.Y.S.2d 425, 661 N.E.2d 999 (1995).
 
 
 17
 The State Court judgment, entered on July 21, 1995, required that POL tender the money and that Burnett return her 1440 shares. POL has tendered full payment to Burnett; but it is not clear on this record whether Burnett has turned over the share certificates. On October 31, 1995, POL moved for summary judgment in state court on three more causes of action. POL sought declarations, inter alia, that Burnett's removal from the Board of Directors was valid and in accord with the terms of the Stockholders' Agreement and the company's by-laws, and that Burnett is bound to return all POL property.[3]
 
 
 18
 After the transfer of the federal action to the Southern District of New York, the district court permitted further briefing on POL's still-pending motion to dismiss. The motion was fully submitted on November 7, 1994. On February 6, 1996, Chief Judge Griesa issued an order abstaining from hearing the matter pursuant to the doctrine announced in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and dismissing the action without prejudice to its reopening at the conclusion of the State Court action.
 
 The district court opinion states:
 
 19
 [POL has] moved in the federal action to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) or, in the alternative, to have the court abstain in view of the pendency of the state court action. While this motion has been pending, [POL] has made a motion in the state court for partial summary judgment. This motion was noticed in August 1995 and has recently become fully submitted. It raises the basic question which is at the heart of the controversy--i.e., whether [POL] had the right to terminate the employment of Burnett. Even the federal law claims about the stock are tied intimately to this question, since Burnett claims that she was deprived of her investment because of the termination.
 
 
 20
 Although Burnett strenuously objects to the idea of the federal court abstaining, [she] has fully participated in the briefing of the current summary judgment motion in the state court, and has never asked for a stay of that action because of a pending federal proceeding.
 
 
 21
 In view of the fact that the state court summary judgment motion is now ripe for decision, it is appropriate for the federal court to abstain and to see precisely what issues, if any, remain to be resolved following the state court decision. It is appropriate to apply the doctrine of Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and Moses H. Cone Memorial Hospital v. Mercury Construction, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
 
 
 22
 This action is dismissed without prejudice to the right of any party to apply to this court to reopen the case at the conclusion of the state court proceeding. As far as any statute of limitations is concerned, Burnett will have the benefit of the filing date of the present action, November 3, 1993. The court will not attempt at this point to otherwise define the scope or the issues of any renewed action. All parties will be free to assert whatever claims or defenses to which they are entitled under the law.
 
 
 23
 Judgment was entered on February 9, 1996.
 
 
 24
 On appeal, Burnett argues that the district court abused its discretion by failing to perform the analysis required by Colorado River, and by abstaining in the absence of any exceptional circumstance that would justify the refusal to exercise its jurisdiction. Additionally, she argues that the district court was obliged to exercise jurisdiction because one of her claims is subject to exclusive federal jurisdiction. Finally, she argues that the Colorado River analysis is applicable only if abstention would facilitate the prompt resolution of the entire dispute in the state forum, whereas in this case, as the district court contemplated and allowed, the parties may return to federal court to adjudicate the remainder of the claims, if any, after the state action is concluded.
 
 
 25
 On cross-appeal, POL argues that the district court should have stayed the proceeding instead of dismissing it; and that, even if the district court's abstention was an abuse of discretion, this Court has power to decide (and should decide in POL's favor) POL's pending 12(b)(6) motion.
 
 DISCUSSION
 
 26
 As a general matter, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246. In Colorado River, however, the Supreme Court announced an abstention doctrine for use in limited situations in which state and federal courts exercise concurrent jurisdiction simultaneously. Although a pending action in a state court does not bar proceedings involving the same matter in a federal court, "exceptional" circumstances do exist that permit the federal court to abstain to the state court.
 
 
 27
 We review the district court's decision to abstain for abuse of discretion. Bethphage Lutheran Serv., Inc. v. Weicker, 965 F.2d 1239, 1244 (2d Cir.1992). This deference is prudent because Colorado River abstention requires a consideration of factors that the district court is ordinarily better positioned than we are to weigh and balance. De Cisneros v. Younger, 871 F.2d 305, 307 (2d Cir.1989).
 
 
 28
 To determine whether Colorado River abstention is appropriate, the district court must weigh six factors, with the "balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983); Bethlehem Contracting, Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 327 (2d Cir.1986). The four original Colorado River factors include:
 
 
 29
 (1) the assumption of jurisdiction by either court over any res or property,
 
 
 30
 (2) the inconvenience of the federal forum,
 
 
 31
 (3) the avoidance of piecemeal litigation, and
 
 
 32
 (4) the order in which jurisdiction was obtained.
 
 
 33
 The Court later added two factors in Cone Memorial Hospital:
 
 
 34
 (5) whether state or federal law supplies the rule of decision, and
 
 
 35
 (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.
 
 
 36
 Bethlehem Contracting, 800 F.2d at 327.
 
 
 37
 Colorado River abstention "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246 (internal quotations omitted). The Court cautioned, however, that abstentionis an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.
 
 
 38
 Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244 (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).
 
 
 39
 The district court's discretion "must be exercised under the relevant standard prescribed" by the Supreme Court. Cone Memorial Hosp., 460 U.S. at 19, 103 S.Ct. at 938.
 
 
 40
 The district court's opinion is a lucid statement of practical and equitable considerations that bear upon abstention. But the opinion does not address the Colorado River factors in a way that allows this Court to review it. Thus the district court relies exclusively on the pendency of a dispositive motion in the state court proceeding, and Burnett's submission of briefs on that motion without having sought a stay there. It is unclear, however, whether these circumstances are deemed to be of controlling significance because there is a probability that all pertinent issues will be resolved one way or another by the state court's decision on the motion; or because the pendency of the motion reflects the progress of the state court action relative to the federal action; or because Burnett failed to remove the state court action when she had the opportunity to do so. Moreover, at least one of Burnett's claims--securities fraud under § 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder--is subject to exclusive federal jurisdiction. Finkielstain v. Seidel, 857 F.2d 893, 896 (2d Cir.1988). We cannot tell what impact this fact may have had on the district court's consideration. Similarly, we do not know what significance the district court accorded to the state court's grant of summary judgment on the rescission issue.
 
 
 41
 Although the test for Colorado River abstention is no "mechanical checklist," Cone Memorial Hosp., 460 U.S. at 16, 103 S.Ct. at 937, the district court must balance the relevant factors in reaching its decision. Deference requires that we review the district court's application of the Colorado River factors, not that we perform the initial balancing on our own. See General Reinsurance Corp. v. CIBA-Geigy Corp., 853 F.2d 78, 81-82 (2d Cir.1988) (affirming district court's application of Colorado River factors); De Cisneros v. Younger, 871 F.2d at 307-09 (same). Of course, we express no view on the merits of the motion to abstain.
 
 
 42
 On remand, the issues that bear on any possible abstention may be affected by intervening events. During the pendency of this appeal, the New York State Supreme Court (Schackman, J.) rendered its decision on POL's summary judgment motion. Physician's Online, Inc. v. Burnett, No. 118559/93, Part 14 (Aug. 13, 1996). And on October 4, 1996, the New York State Supreme Court (Friedman, J.) issued a Judgment, Order, and Decision dealing with POL's motion for renewal or reargument. Physician's Online, Inc. v. Burnett, No. 118559/93, Seq. No. 005 (N.Y.Sup.Ct. Oct. 4, 1996). These opinions may affect the district court's consideration of the relevant abstention factors; and the entry of judgment may (or may not) mark the end point of the abstention period contemplated in the district court's opinion: "This action is dismissed without prejudice to the right of any party to apply to this court to reopen the case at the conclusion of the state court proceeding."
 
 
 43
 If the district court determines on remand that the circumstances justify abstention, the court should reconsider whether to dismiss the federal action (and toll the statute of limitations) rather than stay it. There is no difference between a stay and a dismissal for purposes of the Colorado River doctrine. Bethlehem Contracting, 800 F.2d at 327 n. 1; Cone Memorial Hospital, 460 U.S. at 27-28, 103 S.Ct. at 942-43. But affording the parties the benefit of the original filing date for a new action may lead to controversy as to the scope and operation of the order. Already, this litigation has been in three courthouses, and the allegations back and forth seek to plead claims involving employment, securities, fiduciary duty, fraud, sex discrimination, and contract law. POL is anxious that the tolling of statutes of limitations may allow altogether new claims to be asserted any time in the future. That danger is overdrawn, but is not wholly misplaced.
 
 
 44
 Our decision renders it unnecessary for us to address the cross-appeal seeking a directed dismissal.
 
 CONCLUSION
 
 45
 The judgment is vacated and the case is remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The damages were based upon certain misrepresentations which Burnett allegedly made to POL and upon which POL allegedly relied regarding Burnett's marketing qualifications in the health care industry, the extent of her contacts within the pharmaceutical industry, and her intention to devote substantially all of her time in New York on POL business
 
 
 [2]
 This cause of action was asserted against POL and Mayaud only
 
 
 [3]
 At the time of oral argument before this Court, the state court had not yet rendered a decision on this motion. Subsequently, however, the state court has reached a decision. See Physician's Online, Inc. v. Burnett, No. 118559/93, Part 14 (N.Y.Sup.Ct. Aug. 13, 1996); Physician's Online, Inc. v. Burnett, No. 118559/93, Seq. No. 005 (N.Y.Sup.Ct. Oct. 4, 1996)