**SAPIENT CORPORATION, Plaintiff,**

v.

**Gurvinder SINGH, et ano., Defendants.**

**No. 01 CIV. 2692(LAK).**

United States District Court,
S.D. New York.

July 3, 2001.

Ian Crawford, Juliet A. Davison, Anthony M. Mansfield, Todd & Weld LLP, Boston, MA, Donald Rosenthal, Rosenthal Judell & Uchima, New York City, for Plaintiff.

Curtis E. Pew, Kurt Hunciker, Duane, Morris & Heckscher LLP, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Sapient Corporation ("Sapient") here seeks injunctive relief against its former employee, Gurvinder Singh, and Singh's recently formed company, Indus Valley Partners Pvt. Ltd. ("Indus") for alleged breach of Singh's non-disclosure, non-compete agreement (the "NDA Agreement") and alleged misappropriation of confidential and proprietary information. The matter is before the Court on defendants' motion to dismiss or stay this action in favor of a prior action pending in England.

### Facts

#### Singh's Initial Employment

Sapient is a business and technology consultancy based in Cambridge, Massachusetts, and operating in a number of U.S. cities as well as in Canada, Japan, Australia, Germany, London and India. In March 1998, it rehired Singh as a client/server architect working out of its New Jersey office. It promoted Singh first to senior architect and then to director of technology in 1999 and 2000, respectively. Singh's work was primarily for clients based in New York.

Singh was paid a base salary and provided with stock options pursuant to an Incentive Stock Option Agreement (the "ISO"), which was subject to termination "if, in the good faith determination of the [Sapient] Board, Singh, prior to exercise of the option, engage ... in any Competitive Business or attempted to induce employees of ... the Company Group to terminate, their employment ..." Singh also executed the NDA, which prohibits him from, among other things, working for a Sapient customer or competitor during his employment by Sapient and for a period of one year following termination; using or disclosing any confidential information belonging to Sapient; soliciting any Sapient employees; and engaging in any conflicting business activities while working for Sapient.

In late 1998 or early 1999, Singh relocated to London where he went onto the payroll of Sapient Limited ("Sapient UK") and became involved in Sapient's effort to develop and international presence. While the precise reason for this move are not entirely undisputed, both sides agree that the transfer to London and to the UK payroll were designed in part to assist Singh in obtaining a U.S. "green card."

*The Indian Office*

In late 1999, Singh proposed that Sapient enter into a joint venture with him to expand Sapient's business into India. While the details of the discussions concerning this matter are somewhat controversial, and Sapient never entered into the proposed joint venture, it is undisputed that Sapient ultimately did decide to expand into India and that it sent Singh there as part of that effort. The Sapient office in New Delhi opened on March 9, 2000 and has been very successful, growing rapidly from 5 to approximately 130 employees.

*Singh's Termination*

In early August 2000, Sapient learned information that suggested to it that Singh was soliciting Sapient clients, using Sapient confidential information, with the object of diverting the business to himself. On August 4, 2000, it determined that Singh had breached both the ISO and the NDA and terminated his employment for cause.

*The Formation of Indus*

Indus was formed, according to Singh, by two of his cousins at the end of September 2000, and Singh became chief executive officer. The question whether it competes with Sapient is hotly disputed. It presently is soliciting business in the New York financial services sector that Sapient has served for some time.

*The English Litigation*

In January 2001, Singh commenced an action for damages for wrongful termination and wrongful cancellation of Singh's stock options against Sapient UK in the Queen's Bench Division of the English High Court of Justice in London. Neither Sapient nor Indus is a party to that action.

Sapient UK responded by moving to stay the English action on the ground of *forum non conveniens*, asserting in substantial measure that Singh's only employment relationship was with Sapient, not Sapient UK, that Singh had breached his obligations under the NDA and the ISO, and that the dispute should be resolved here. On March 6, 2001, however, Mr. Justice Morland of the High Court denied the stay, essentially on the ground that Sapient UK had failed to show that the United States "clearly and distinctly is more appropriate than the English forum where the claimant's claim is now made."[1] The High Court subsequently set the English case for trial commencing on October 8, 2001.[2] Any claims that Sapient UK has that arise out of the NDA are compulsory counterclaims in that action.[3]

*Subsequent Developments—The Institution of this Action*

In March 2001, while gathering information for use in the English action, Sapient learned of the formation of Indus and came upon evidence that leads it to the conclusion that Indus is competing with it, particularly in the financial services sector. On March 29, it moved by order to show cause for expedited discovery and a preliminary injunction. During a hearing on April 26, Sapient did not press the applica-

---

1. Singh Aff. Ex. 5, at 8.

2. *See* Merali Aff. ¶ 7 & Ex. 9

3. *Id.* ¶ 10.

tion for injunctive relief, limiting its request to expedited discovery in order to enable it later to move for a preliminary injunction. That request was granted. Defendant subsequently made its motion to stay the action in favor of the English litigation.

## Discussion

■■■ Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."[4] Accordingly, they generally exercise their jurisdiction concurrently with foreign courts handling related litigation.[5] They will stay their hands only when considerations such as "similarity of the parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, . . . fairness to all parties and possible prejudice to any of them, and the temporal sequence of filing for each action" render the circumstances exceptional.[6]

Sapient UK and Singh both are parties here and in London. Sapient and Indus are not. In view of the fact that Indus has agreed to submit to jurisdiction in London[7] and, in any case, that this Court could condition a stay of this action on its doing so, its absence there is of no moment. Nor is the absence there of Sapient itself of any real significance. Sapient does business in London thorough its subsidiary, Sapient UK. For all practical purposes it is Sapient that is defending the London lawsuit on the ground that Singh breached his contractual obligations with it. The overlap of the parties and the ease with which the party lineup in London could be made identical to that in this case cuts in favor of a stay.

The parties differ radically on the degree of similarity between the issues here and in London. Singh and Indus argue that Sapient UK has injected Singh's adherence to his NDA and ISO obligations as a defense to the London action and therefore would have the Court conclude that the issues in both cases are identical. Sapient, on the other hand, argues that its principal focus in this action is on defendants' conduct after Singh was terminated, i.e., on his alleged competition in violation of his non-compete and his alleged misuse of Sapient trade secrets.

Sapient has a valid point here. While Singh's pre-termination conduct is at issue in London and relevant here, his post-termination conduct is germane only to this action. It would become significant to the London action only if Sapient elected to inject that issue in that forum. Accordingly, the degree of similarity or dissimilarity of issues cuts somewhat in favor of Sapient.

The matter of judicial efficiency follows from what has just been said. Certainly it is hard to argue that judicial efficiency would be served by having judges both here and in the United Kingdom consider the merits of Sapient's claims of pre-termination misconduct by Singh, a matter that is relevant to both cases. But the post-termination issues are present only here. Moreover, the doctrines of former adjudication are likely to ameliorate any duplication of effort because resolution of the issues concerning Singh's pre-termination

---

4. *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

5. *Chemical Waste Mgt., Inc. v. Hernandez,* No. 95 Civ. 9650(HB), 1997 WL 47811, *3 (S.D.N.Y. Feb.5, 1997).

6. *E.g., Modern Computer Corp. v. Ma,* 862 F.Supp. 938, 949 (E.D.N.Y.1994).

7. Tr., Apr. 26, 2001, at 3–4.

activities by the first court to decide them probably will be dispositive in the second court. Accordingly, while judicial economy probably would be served to a degree by having a single court consider the entire matter, not all of the issues are centered in London.

Sapient next questions the adequacy of the relief available in London, asserting that injunctive relief to enforce non-competition agreements is virtually unheard of in England, as it would violate English public policy.[8] While defendants tacitly concede the point, they seek to sidestep it by asserting that the English court already has determined that Singh was an employee of Sapient UK, not Sapient, and that Sapient in substance is seeking a second bite at that apple.[9] But defendants' argument appears to be too clever by half. Even if the English court had determined definitively that Singh was a Sapient UK employee at the time he was terminated,[10] the fact remains that he was a Sapient employee immediately prior thereto and that he was subject to post-employment restrictions by virtue of his contracts with Sapient. Hence, irrespective of the question whether Sapient UK has a defense to Singh's London wrongful termination action, Sapient has a claim against him for breach of his obligations to it by virtue of his actions

following his employment by Sapient. And while this Court assumes that the English courts would apply U.S. law to determine that question, there has been no showing that it would give effect to that U.S. substantive law by granting an injunction that would be precluded as against public policy under English law. In consequence, there is substantial reason to question whether Sapient could obtain adequate relief in London, although this is not a suggestion that the High Court lacks equitable jurisdiction or in any respect a criticism of the English courts.

■ In the last analysis, there is a considerable amount to be said for each side. Defendants draw support from the facts that all of the parties readily could litigate in London, that all of the issues presented here could be presented in London if all parties here joined in that action, that the interests in judicial economy would be served if they did so, that the London action was filed first,[11] and that Sapient to some extent is playing dog-in-the-manger by staying out of the UK litigation. On the other hand, Sapient's position is buttressed by the facts that the scope of the issues presented here is broader than in London by virtue of the pivotal nature here of the post-employment allegations,

---

8. See Algazy Aff., *passim.*

9. Def. Reply Mem. 7–9.

10. In fact, it made only a provisional finding on that point in order to decide the stay motion. See Singh Aff. Ex. 5, at 7. The issue apparently remains open at trial.

11. Although as a general matter courts in deciding motions to stay proceedings should consider "the order in which jurisdiction was obtained by the concurrent forums," see *Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*

*Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In almost all respects these actions are in similar stages. Neither action has proceeded to trial. In this action, however, unlike the action in London, substantial discovery has already been undertaken. Measured under the more flexible standard of *Moses H. Cone*, then, the balance tips towards denying the stay. *Accord, Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327–28 (2d Cir.1986) (court should not stay in favor of first-filed action where despite otherwise similar stages of the two proceedings, discovery had progressed further in the second proceeding).

that the dissimilarity of the two actions in their present postures is attributable at least in part to Singh's deliberate narrow structuring of the UK action, that Sapient appears more likely to be able to obtain effective relief from this Court if it prevails, and that a principal focus of the allegedly improper post-termination competition between Singh and Sapient is the New York financial services industry, a fact that makes compulsory process to obtain unwilling witnesses singularly available from this Court.

In view of the foregoing, the balance between the two sides is close. It is defendants' burden to demonstrate the existence of extraordinary circumstances overcoming the presumption that federal courts will exercise the jurisdiction that Congress has granted them. Given the closeness of the competing considerations, the Court concludes that they have not sustained that burden.

### Conclusion

For the foregoing reasons, defendants' motion is denied.

SO ORDERED.