ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
This action is but one of many legal disputes currently pending between the *383 parties, arising out of construction activities on property owned by Marist College ("Marist") in Poughkeepsie, New York. This dispute involves the contractual rights and obligations between plaintiff The Pike Company, Inc. ("Plaintiff") and defendant Universal Concrete Products, Inc. ("Defendant"). Plaintiff, the general contractor for the construction project, claims that Defendant, its subcontractor, materially breached the terms of the parties' subcontract and improperly encumbered the project property with a mechanic's lien that has been discharged by bond. (See Dkt. 7 at 6-9). Plaintiff seeks damages for breach of contract, unjust enrichment, and violations of the New York Lien Law, and an order invalidating and vacating the lien and bond. (Id. ).
Presently before the Court is Defendant's motion to dismiss, stay, or transfer this action (Dkt. 8), and Marist's motion to intervene as a plaintiff-intervenor (Dkt. 18). For the following reasons, Defendant's motion is denied, and Marist's motion is granted.
BACKGROUND [1]
Marist, a private liberal arts college located in Poughkeepsie, New York, engaged the services of Kirchoff-Consigli Construction Management, LLC ("KCCM") to act as the general contractor for a construction project involving several buildings on Marist's campus (the "Project"). (Dkt. 18-1 at ¶ 4 (Affidavit of Justin Butwell)). Defendant acted as KCCM's subcontractor for the Project until May 4, 2015, when Marist hired Plaintiff to replace KCCM as the general contractor. (Id. at ¶¶ 5-7). On May 29, 2015, Plaintiff and Defendant entered into a subcontract to perform work on the Project (the "Subcontract"). (Id. at ¶ 8; see Dkt. 7 at ¶ 8).
Plaintiff alleges that the Subcontract contains an alternative dispute resolution clause, requiring the parties to proceed with mediation before seeking judicial recourse should a dispute arise under the Subcontract's terms. (See Dkt. 7 at ¶ 10). Defendant allegedly fell behind on its scheduled timetable, causing Plaintiff to send a number of letters to Defendant requesting that it cure these defaults. (Id. at ¶ 12; see Dkt. 7-1 (Letter Exhibits)). On September 27, 2016, Plaintiff requested damages from Defendant for its failure to remedy its allegedly untimely performance. (Dkt. 7 at ¶ 14). In response, on October 31, 2016, Defendant filed a mechanic's lien on the subject property, which was discharged by bond. (Id. at ¶ 15).
On December 22, 2016, Defendant filed a writ of summons, without a complaint, in the Court of Common Pleas of Montgomery County, Pennsylvania, naming Plaintiff and Marist as party defendants. (Dkt. 8-2 (Writ of Summons)). Plaintiff alleges that Defendant filed this action without complying with the mediation requirements set forth in the Subcontract. (Dkt. 7 at ¶ 16). Indeed, after Plaintiff filed for mediation with the American Arbitration Association ("AAA") in March of 2017, and the AAA scheduled a preliminary mediation session, Defendant refused to proceed with mediation. (Id. at ¶¶ 23-26).
PROCEDURAL HISTORY
On May 4, 2017, Plaintiff commenced this action against Defendant in New York State Supreme Court, Monroe County, alleging causes of action for breach of contract and unjust enrichment ("NYS Action"). (Dkt. 1-1 at ¶¶ 8-13). On June 8, *384 2017, Defendant filed an action in the United States District Court for the Eastern District of Pennsylvania, requesting the federal court to declare the mediation clause of the Subcontract void and unenforceable, and to enjoin Plaintiff from enforcing that clause against Defendant ("EDPA Action"). (Dkt. 8-6 at 12-13). The next day, Defendant removed the NYS Action to this Court, alleging that the Court could entertain this action on the basis of diversity jurisdiction. (Dkt. 1 at ¶ 7).[2] On the same day, Defendant filed its complaint in the Court of Common Pleas of Montgomery County, Pennsylvania, alleging various causes of action, including breach of contract, unjust enrichment, misappropriation of trade secrets, and tortious interference with business relations. (Dkt. 8-4 at 10-21). Throughout the remainder of this Decision and Order, the Court will refer to the action commenced in the Court of Common Pleas of Montgomery County, Pennsylvania, as the "State Action."
On June 30, 2017, Plaintiff filed an amended complaint that expounded upon the original complaint, and alleged causes of action against Defendant that included breach of contract, unjust enrichment, and violations of the New York Lien Law. (Dkt. 7 at 6-9). On July 14, 2017, Defendant moved to dismiss or stay this action on the ground that the abstention doctrine set forth in Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) should apply in light of the pending proceedings in the State Action. (Dkt. 8-7 at 12-18). Alternatively, Defendant requests that the Court transfer this case to the Eastern District of Pennsylvania under the "first-to-file" rule so that this action and the EDPA Action may be consolidated. (Id. at 18-20). Plaintiff opposes Defendant's motion. (Dkt. 11).
On October 2, 2017, Marist filed a motion to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. (Dkt. 18). Marist is represented on this motion by the same law firm that represents Plaintiff in the instant action. Not surprisingly, Plaintiff does not object to Marist's motion to intervene. However, Defendant opposes the motion. (Dkt. 22).
Oral argument was held before the undersigned on December 13, 2017, at which time the Court reserved decision on both motions.
DISCUSSION
I. Defendant's Motion to Dismiss or to Stay This Action Based on Colorado River Abstention is Denied
A. Legal Standard
"A motion to dismiss based on Colorado River is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure." Stahl York Ave. Co., LLC v. City of New York, No. 14 CIV. 7665 (ER), 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015), aff'd, 641 Fed.Appx. 68 (2d Cir. 2016), cert. denied --- U.S. ----, 137 S.Ct. 372, 196 L.Ed.2d 290 (2016) ; see Rehab. Support Servs., Inc. v. Town of Esopus, 226 F.Supp.3d 113, 125 (N.D.N.Y. 2016) (" 'A motion to dismiss *385 based on the abstention doctrine is ... considered as a motion made pursuant to Rule 12(b)(1).' " (quoting City of New York v. Milhelm Attea & Bros., Inc., 550 F.Supp.2d 332, 341 (E.D.N.Y. 2008) )).
"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that the court retains jurisdiction." Makarova v. United States , 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." Shipping Fin. Servs. Corp. v. Drakos , 140 F.3d 129, 131 (2d Cir. 1998). "[T]he district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002). "Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Celestine v. Mount Vernon Neighborhood Health Ctr. , 289 F.Supp.2d 392, 399 (S.D.N.Y. 2003), aff'd, 249 Fed.Appx. 851 (2d Cir. 2007). "The court may consider affidavits and other materials beyond the pleadings but cannot rely on conclusory or hearsay statements contained in the affidavits." Young v. United States, No. 12-CV-2342 (ARR)(SG), 2014 WL 1153911, at *6 (E.D.N.Y. Mar. 20, 2014) (quotation omitted).
B. Colorado River Abstention
1. General Principles
"Abstention from the exercise of federal jurisdiction is the exception, not the rule." Colo. River Water Conservation Dist. , 424 U.S. at 813, 96 S.Ct. 1236. "Where, as here, a federal court properly has subject matter jurisdiction, it has a 'virtually unflagging obligation' to exercise that jurisdiction, even if an action concerning the same matter is pending in state court." Bethlehem Contracting Co. v. Lehrer/McGovern, Inc. , 800 F.2d 325, 327 (2d Cir. 1986) (quoting Colo. River Water Conservation Dist. , 424 U.S. at 817-18, 96 S.Ct. 1236 ). " Colorado River abstention is appropriate in limited 'situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts.' " First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc. , 862 F.Supp.2d 170, 181 (E.D.N.Y. 2012) (quoting Colo. River Water Conservation Dist. , 424 U.S. at 817, 96 S.Ct. 1236 ). "The underlying principles of the Colorado River doctrine rest on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " Radioactive, J.V. v. Manson , 153 F.Supp.2d 462, 474 (S.D.N.Y. 2001) (quoting Colo. River Water Conservation Dist. , 424 U.S. at 817, 96 S.Ct. 1236 ).
2. The State Action and this Matter are "Parallel" Proceedings
"[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River ." Dittmer v. County of Suffolk , 146 F.3d 113, 118 (2d Cir. 1998). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp , 108 F.3d 17, 22 (2d Cir. 1997). "Complete identity of parties and claims are not required. However, resolution of the state action must dispose of all claims presented in the federal case."
*386 DDR Constr. Servs., Inc. v. Siemens Indus., Inc. , 770 F.Supp.2d 627, 644 (S.D.N.Y. 2011) (internal quotation marks and citations omitted).
Here, Defendant argues that the instant matter and the State Action are "parallel" proceedings because "[b]oth actions involve a dispute between [Plaintiff] and [Defendant] in regard to alleged breaches of the [Subcontract] for the Marist Project." (Dkt. 8-7 at 14). Therefore, Defendant concludes, the same parties are litigating substantially the same issues in both forums. (Id. at 14-15). Plaintiff responds that the parties are not identical because "Marist College is not currently a party to this action," and that the causes of action asserted in this case are "completely different." (Dkt. 11 at 12). However, Plaintiff's argument is not persuasive.
"[T]he threshold requirement is that there be a substantial identity of parties between the state and federal actions." Aurelius Capital Master, Inc. v. MBIA Ins. Corp. , 695 F.Supp.2d 68, 73 (S.D.N.Y. 2010) (emphasis added); see Dittmer , 146 F.3d at 118 ("Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." (quotation marks and citation omitted)). "Perfect symmetry of parties and issues is not required." Allstate Ins. Co. v. Elzanaty , 916 F.Supp.2d 273, 287 (E.D.N.Y. 2013) (quotation marks and citation omitted). Accordingly, because Plaintiff and Defendant are parties to the State Action, the substantial identity of the parties involved in these two proceedings is not undermined simply because Marist is not presently a party to this action. See Pabco Constr. Corp. v. Allegheny Millwork PBT , No. 12 CIV. 7713, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10, 2013) ("While the parties in the two actions are not strictly identical-[the defendant]'s surety ... is named as a defendant in this action but not in the Pennsylvania Action-this does not destroy the parallelism of the two actions...."); First Keystone Consultants, Inc. , 862 F.Supp.2d at 182 ("As an initial matter, all of the parties remaining in the instant Federal Action are also parties to the Queens Action. Although the Queens Action involves an additional party, DDR, that fact does not render the proceedings non-parallel." (quotation marks and citations omitted)); Mouchantaf v. Int'l Modeling & Talent Ass'n , 368 F.Supp.2d 303, 306 (S.D.N.Y. 2005) ("While the Arizona action involves additional defendants not parties here, that fact does not render the proceedings non-parallel."); Great S. Bay Med. Care, P.C. v. Allstate Ins. Co. , 204 F.Supp.2d 492, 497 (E.D.N.Y. 2002) ("While the State Court Action names numerous defendants in addition to GSB, this factor alone does not render the proceedings non-parallel."); see generally Bethlehem Contracting Co. , 800 F.2d at 328 (noting the "similarity of parties," and stating that "eleven of the fourteen defendants in state court are unique to that action"); cf. Aurelius Capital Master, Inc. , 695 F.Supp.2d at 73 ("None of the plaintiff banks in [the state action] is a plaintiff here, and none of the plaintiffs here is a plaintiff in the state action.").[3]
*387 Furthermore, the issues are substantially the same between the two proceedings. Again, "absolute congruency [of assertions] is not necessary to support a finding of Colorado River parallelism." Pabco Constr. Corp. , 2013 WL 1499402, at *2 (finding parallel proceedings even though one action sought a declaratory judgment and the other pursued monetary relief). The main issue in this case-the rights and obligations of Plaintiff and Defendant under the Subcontract-is already the subject of the State Action. See, e.g., Dunne v. Doyle, No. 3:13-CV-01075 (VLB), 2014 WL 3735287, at *8 (D. Conn. July 28, 2014) (" '[C]omplete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation.' " (quoting GBA Contracting Corp. v. Fid. & Deposit Co. of Md. , No. 00 CIV. 1333 (SHS), 2001 WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001) )); Pabco Constr. Corp. , 2013 WL 1499402, at *2 (same); Weiser v. Koch , 632 F.Supp. 1369, 1386 (S.D.N.Y. 1986) (same). Moreover, the determination of the parties' contractual obligations under the Subcontract in the State Action would dispose of Plaintiff's claims in the instant action, since they are grounded in an interpretation of the same contractual instrument. See generally Discovery Ortho Partners, LLC v. Osseous Techs. of Am., Inc. , No. 10 CV 1729 (HB), 2010 WL 3239428, at *5 (S.D.N.Y. Aug. 17, 2010) ("Since the California declaratory action is predicated solely on the interpretation of the same agreement between the parties that [the plaintiff] alleges was breached in this diversity suit, the proceedings are indeed parallel."). Indeed, even Plaintiff's claims under the New York Lien Law appear to be based upon Defendant's alleged violation of the Subcontract. (See Dkt. 7 at ¶ 46 ("[Defendant] inappropriately filed a lien on the Property even though it had not performed under the [S]ubcontract."); id. at ¶ 49 (alleging that "[Defendant]'s failure to pay certain of its subcontractors after [Plaintiff] had paid [Defendant] for their work caus[ed] them to file liens against the property" in violation of the New York Lien Law)).
Therefore, the Court concludes that the State Action and the instant matter are "parallel" proceedings for purposes of Colorado River abstention. The Court now turns to whether the Colorado River factors weigh in favor of or against the exercise of federal jurisdiction.
3. The Colorado River Factors Weigh in Favor of Federal Jurisdiction
"After determining that the state and federal proceedings are parallel, the question becomes whether the court should exercise its discretion to abstain." Phillips v. Citibank, N.A., 252 F.Supp.3d 289, 298 (S.D.N.Y. 2017). In determining whether Colorado River abstention should be applied,
the court should consider (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.
Woodford v. Cmty. Action Agency of Greene Cty., Inc. , 239 F.3d 517, 522 (2d Cir. 2001) (citations omitted). "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important *388 factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
a. Jurisdiction Over Res
Both parties contend that this action does not entail the exercise of judicial jurisdiction over property. (Dkt. 8-7 at 18; Dkt. 11 at 14). "[T]he absence of a res 'point[s] toward exercise of federal jurisdiction.' " Vill. of Westfield v. Welch's , 170 F.3d 116, 122 (2d Cir. 1999) (quoting De Cisneros v. Younger , 871 F.2d 305, 307 (2d Cir. 1989) ). However, the Court also notes that Plaintiff has requested this Court to vacate a lien encumbering the Project property, which is located in New York. See York Hunter Constr., Inc. v. Avalon Props., Inc. , 104 F.Supp.2d 211, 214 (S.D.N.Y. 2000) ("Actions to foreclose mechanic's liens are in rem in nature." (citing N.Y. Lien Law § 70 )); see generally N.Y. Lien Law § 59 (providing the procedures to vacate a mechanic's lien). While this may not constitute jurisdiction over a res in the traditional sense of the Colorado River doctrine, it is the Court's view that, if anything, this factor weighs that much more heavily in favor of federal jurisdiction as a result. Cf. F.D.I.C. v. Four Star Holding Co. , 178 F.3d 97, 102 (2d Cir. 1999) (holding that the first Colorado River factor was dispositive in an in rem action) (quoting Donovan v. City of Dallas , 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) ).
b. Forum Convenience
Defendant also concedes that neither "forum [is] dramatically more convenient," and characterizes this factor as "neutral." (Dkt. 8-7 at 18). The Second Circuit has "held that where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court." Vill. of Westfield, 170 F.3d at 122 (quoting Youell v. Exxon Corp. , 48 F.3d 105, 113 (2d Cir.), vacated on other grounds , 516 U.S. 801, 116 S.Ct. 43, 133 L.Ed.2d 9 (1995) ). In addition, while "[t]he distance between state and federal fora has been deemed to render the federal forum inconvenient," Shields v. Murdoch, 891 F.Supp.2d 567, 581 (S.D.N.Y. 2012), at least one court has found that, "with modern travel options, the effective distance between [New York] and [Delaware] is short and would not appear to pose undue hardship." SST Glob. Tech., LLC v. Chapman, 270 F.Supp.2d 444, 465 (S.D.N.Y. 2003). Accordingly, even if Defendant did not characterize this factor as "neutral," the Court would come to the same conclusion as Chapman in finding that the distance between Western New York and Montgomery County, Pennsylvania, is not unduly burdensome given the modern conveniences of travel.
Therefore, the Court concludes that the second factor weighs in favor of federal jurisdiction.
c. Avoidance of Piecemeal Litigation
"[T]he primary context in which [the Second Circuit] ha[s] affirmed Colorado River abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." Woodford , 239 F.3d at 524. However, "[t]he mere potential for conflicting outcome between the two actions does not justify abstention under the 'piecemeal litigation' factor." In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig. , 757 F.Supp.2d 260, 345 (S.D.N.Y. 2010) (citing Colo. River Water Conservation Dist. , 424 U.S. at 816, 96 S.Ct. 1236 ). "[B]ecause any case involving *389 parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise, dismissals pursuant to Colorado River would be the rule, not the exception...." King v. Hahn , 885 F.Supp. 95, 98 (S.D.N.Y. 1995) ; see Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc. , 829 F.Supp.2d 82, 87 (E.D.N.Y. 2010) (same).
Here, the State Action names Marist as a defendant, but Marist is not a named party in the instant federal action. Accordingly, "the state action is more comprehensive, because it involves defendants not present in the federal action[, and thus, there is] ... some risk of inconsistent result[s]." In re Asbestos Litig. , 963 F.Supp. 247, 252 (S.D.N.Y. 1997) ; see Dalzell Mgmt. Co. v. Bardonia Plaza, LLC , 923 F.Supp.2d 590, 600 (S.D.N.Y. 2013) ("[A]s the federal and state actions are based on the same underlying facts, there is some risk of an inconsistent result; this Court could make a determination on common issues which might not bind the parties named only in the state court action."). In Goldentree Asset Mgmt., L.P. v. Longaberger Co. , 448 F.Supp.2d 589 (S.D.N.Y. 2006), the court found that "the state action and federal action involve the same parties, and concern identical claims," and that "[t]he existence of nearly identical claims in two different suits results in needless duplication of proceedings and wasting of judicial resources." Id. at 594. However, the claims asserted in the State Action-while substantially similar-are not "nearly identical" when compared to those asserted by Plaintiff in the instant action. See Stern v. Milford Bd. of Educ. , 870 F.Supp. 30, 34 (D. Conn. 1994) ("[L]itigation over a common set of facts was not piecemeal when the federal action joined a claim the state action did not." (citing Bethlehem Contracting Co. , 800 F.2d at 328 ("[A]lthough the disputes in both the state and federal forums stem from the [same] ... construction project, [the plaintiff]'s federal suit raises a cause of action in tort against [defendant] that has no counterpart in the state litigation."))).
The Court notes that the importance of this factor is also lessened by the fact that Marist has moved to intervene in the present action. (Dkt. 18). As will be discussed below, Marist maintains "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and will be permitted to intervene in this action. See Gonzalez v. Cruz , 926 F.2d 1, 5 (1st Cir. 1991) ("[T]he district court should consider whether, if the [the proposed intervenor] is permitted to intervene, its presence in the federal suit may possibly create additional considerations with respect to the desirability of avoiding piecemeal litigation."). Since the State Action would no longer be "more comprehensive" than the present matter after Marist is permitted to intervene, the risk of inconsistent results will likely diminish. See generally Goodman v. Heublein, Inc. , 682 F.2d 44, 47 (2d Cir. 1982) ("[P]ermitting intervention here will minimize piecemeal litigation.").
Therefore, the Court finds that this factor weighs in favor of abstention, but, on balance, that it carries only modest weight. See Mazuma Holding Corp. v. Bethke , 1 F.Supp.3d 6, 26 (E.D.N.Y. 2014) ("[W]hile not staying the federal actions will lead to some amount of duplication due to similar 'factual underpinnings,' such 'duplication does not weigh significantly in favor of abstention.' " (quoting Chapman , 270 F.Supp.2d at 466 )); Suffolk Fed. Credit Union , 829 F.Supp.2d at 87 ("[A]lthough the Court agrees that this situation poses a threat of inconsistent results, ... [and] while this factor is important and does *390 weigh in favor of abstention, it is not determinative.").
d. Order of Filing and Progress of Proceedings
The jurisdictional priority factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem'l Hosp. , 460 U.S. at 21, 103 S.Ct. 927. "Even where, as here, a state action was commenced before the federal suit, that factor will carry 'little weight' if 'there has been limited progress in [the] state court suit.' " Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist. , 673 F.3d 84, 102 (2d Cir. 2012) (quoting Vill. of Westfield, 170 F.3d at 122 ).
As of August 11, 2017, at the time Defendant filed its reply papers on this motion, the State Action had not proceeded any further than the instant matter. (Dkt. 14 at 6). During the motion hearing held on December 13, 2017, counsel for Plaintiff and Defendant informed the Court that the status of the State Action had not advanced. Although Defendant argues that this factor weighs in favor of abstention, Defendant's rationale is contrary to the basic tenet that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colo. River Water Conservation Dist. , 424 U.S. at 813, 96 S.Ct. 1236. This Court is not tasked with finding "some substantial reason for the exercise of federal jurisdiction ...; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Moses H. Cone Mem'l Hosp. , 460 U.S. at 25-26, 103 S.Ct. 927. Indeed, the Second Circuit has held that "[b]ecause the district court could not have concluded that there was more progress in the state action than in the federal action, this factor weighs against [abstention]." Vill. of Westfield , 170 F.3d at 123 (emphases added); State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C. , 589 F.Supp.2d 221, 239 (E.D.N.Y. 2008) ("[The d]efendants have not provided the status of the state court claims nor have they argued that those cases are further along than the case before this Court." (emphasis added)).
Since the parallel actions have proceeded at relatively the same pace, the fact that the State Action was filed before this action has little impact on the Court's analysis of this factor. Moreover, while the State Action was technically filed on December 22, 2016, by a writ of summons (Dkt. 8-2), the complaint was not subsequently filed until June 9, 2017 (Dkt. 8-4)-some five-and-a-half months later-which was one day after Plaintiff filed the present action in New York State Supreme Court. (Dkt. 1-1 at 1-6). Therefore, the Court concludes that the fourth factor counsels against abstention.
e. The Source of Substantive Law
"When the applicable substantive law is federal, abstention is disfavored, though the inverse proposition will not alone support a surrender of federal jurisdiction." De Cisneros , 871 F.2d at 308. Indeed, "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." Vill. of Westfield , 170 F.3d at 124 (emphasis added).
Defendant argues that the fifth factor weighs in favor of abstention because the source of substantive law in this action will likely be New York State law, and that Pennsylvania law will govern claims six and seven of the State Action.
*391 (Dkt. 8-7 at 17). Defendant also contends that its misappropriation of trade secrets claim in the State Action "presents a complex and novel question of Pennsylvania law." (Id. ). "State law provides the rule of decision in all diversity cases, and the source-of-law factor has more influence when a federal rule of decision is involved; only in some rare circumstances [may] the presence of state law issues ... weigh in favor of ... surrender of federal jurisdiction." Bethlehem Contracting Co. , 800 F.2d at 328 (quotations and citations omitted). As such, the mere fact that state law governs the various claims in this action is of little concern.
"In cases involving only routine issues of state law, which federal district courts are fully capable of deciding, there are no such rare circumstances." Smehlik v. Athletes & Artists, Inc. , 861 F.Supp. 1162, 1167 (W.D.N.Y. 1994) (quotation marks and citation omitted). Defendant's bald assertion that the claim for misappropriation of trade secrets is "complex and novel" is unsupported by any explanation or case support. In any event, the Pennsylvania state law claims are not before this Court, and are asserted only in the State Action. See State Farm Mut. Auto. Ins. Co. , 589 F.Supp.2d at 240 ("The state law issues before this Court are not particularly complex and defendants have provided no reason why this forum would be an inappropriate place in which to decide them." (emphasis added)); Estee Lauder Cos. Inc. v. Batra , 430 F.Supp.2d 158, 169 (S.D.N.Y. 2006) ("[The defendant] has failed to demonstrate how the issues implicated in this case present complex or unique questions."). Indeed, the various claims appearing in this action, which include a breach of contract claim, unjust enrichment, and the vacatur of a mechanic's lien under New York's Lien Law, are not particularly novel or complex. Frydman v. Verschleiser , 172 F.Supp.3d 653, 666 (S.D.N.Y. 2016).
Therefore, the Court finds that the fifth factor weighs in favor of federal jurisdiction.
f. Whether the State Court Will Adequately Protect the Parties' Interests
"In analyzing the sixth factor in the special circumstances test, federal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.' " Vill. of Westfield , 170 F.3d at 124 (quoting Moses H. Cone Mem'l Hosp. , 460 U.S. at 28, 103 S.Ct. 927 ). "The sixth factor is only significant if it militates in favor of federal litigation." Sulton v. Ashley , No. 01 CIV 8179 (JSM), 2002 WL 122919, at *4 (S.D.N.Y. Jan. 29, 2002) (citing Bethlehem Contracting Co. , 800 F.2d at 328 ("This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction. It is thus of little weight here.")). The Court finds no basis to conclude that the Pennsylvania courts are incapable of adequately protecting the interests of the parties. Indeed, it would appear that Plaintiff's federal diversity claims could have been asserted as counterclaims in the Pennsylvania action. See Sea Tow Servs. Int'l, Inc. v. Pontin , No. 06CV3461(JFB)(ETB), 2007 WL 1135601, at *7 (E.D.N.Y. Apr. 17, 2007) ; Estee Lauder Co. Inc. , 430 F.Supp.2d at 169.
The Court does not agree with Plaintiff that the State Action is proceeding at a prejudicially slow pace. Cf. Vill. of Westfield , 170 F.3d at 122 (determining that the state court proceeded at a "slow pace" where it had "invested over thirteen years in the matter"). While the State Action has been pending for a little over a year, up until this point, the present matter has not proceeded much further. In any event, this *392 factor appears to be neutral and provides no reason to abstain from exercising federal jurisdiction. See State Farm Mut. Auto. Ins. Co. , 589 F.Supp.2d at 240 ("The last factor appears to be neutral. There is no reason to think that the state court would not adequately protect [the] plaintiff's rights, but that in itself is not sufficient reason to abstain."). In fact, the neutral nature of factor six "weighs against abstention pursuant to Colorado River. " Sea Tow Servs. Int'l, Inc. , 2007 WL 1135601, at *7 ; see Woodford, 239 F.3d at 522 ("[T]he facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it.").
Thus, it is the Court's view that the "[a]voidance of piecemeal litigation is perhaps the only Colorado River factor that weighs in favor of abstention. That is not enough, however, to warrant abstention in light of the fact that all other factors weigh heavily in favor of the retention of jurisdiction." In re Comverse Tech., Inc. Derivative Litig. , No. 06-CV-1849 (NGG) (RER), 2006 WL 3193709, at *6 (E.D.N.Y. Nov. 2, 2006). Therefore, the Court denies Defendant's motion to the extent that it requests the dismissal or a stay of this action.
II. Defendant's Alternative Request to Transfer this Action to the Eastern District of Pennsylvania is Denied
Defendant further argues that should this Court decline to dismiss or to stay this action under the Colorado River doctrine, the Court should transfer the action to the United States District Court for the Eastern District of Pennsylvania under the first-to-file rule. (Dkt. 8-7 at 18-20). Specifically, Defendant contends that because it commenced the EDPA Action on June 8, 2017-one day before the instant action was removed to federal court-Plaintiff's complaint should be transferred. Plaintiff responds that Defendant cannot invoke the first-to-file rule because the EDPA Action was improperly filed in anticipation of this removal action as a manipulative tactic. (Dkt. 11 at 23-24). Plaintiff also urges this Court to consider the date it filed the instant action in New York State Supreme Court, rather than the date the action was removed to federal court, in applying the first-to-file rule. (Id. at 24).
It is well-established in this Circuit that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second." First City Nat. Bank & Tr. Co. v. Simmons , 878 F.2d 76, 79 (2d Cir. 1989) (quoting Fort Howard Paper Co. v. William D. Witter, Inc. , 787 F.2d 784, 790 (2d Cir. 1986) ). "Special circumstances include manipulative or deceptive behavior on the part of the first-filing plaintiff." N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc. , 599 F.3d 102, 112 (2d Cir. 2010). Although such "special circumstances," as the name portends, arise only in a "limited number" of situations, "[o]ne exists where the first-filed lawsuit is an improper anticipatory declaratory judgment action." Emps. Ins. of Wausau v. Fox Entm't Grp., Inc. , 522 F.3d 271, 275 (2d Cir. 2008). "[I]n order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." Id. at 276.
Defendant's argument for the application of the first-to-file rule lacks merit. Defendant filed the EDPA action-which asks the court to declare the Subcontract as void and unenforceable, and to enjoin Plaintiff from enforcing it-just one day before the NYS Action was removed to this Court. (Dkt. 8-6; see Dkt. 1). Moreover, it was Defendant, not Plaintiff, who invoked federal jurisdiction by filing a notice *393 of removal. (Dkt. 1). These facts suggest that Defendant engaged in gamesmanship in an attempt to manipulate the choice of forum. Given the equitable nature of the first-to-file doctrine, the Court finds Defendant's assertions unpersuasive. See generally AEI Life, LLC v. Lincoln Ben. Life Co. , 305 F.R.D. 37, 44 (E.D.N.Y. 2015) ("Whether to apply the first-to-file rule is ultimately an equitable task within the sound discretion of the district court.").
In any event, the Court need not determine whether Defendant's conduct constitutes the type of "special circumstances" that warrant granting priority to the second-filed action. Instead, the Court agrees with Plaintiff that the appropriate benchmark for determining which case was filed first is the date the action was commenced in state court, not the date of removal. See MacDermid Printing Sols., LLC v. E.I. Du Pont De Nemours & Co. , No. 3:15-CV-00320 (MPS), 2015 WL 4165823, at *1 (D. Conn. May 21, 2015) (finding that the Delaware state court action was "the first-filed action" where the state court action was filed one day before the federal complaint, and only then was the state action later removed to federal court); S-Fer Int'l, Inc. v. Paladion Partners, Ltd. , 906 F.Supp. 211, 216 n.2 (S.D.N.Y. 1995) ("For the purpose of selecting a date, the date the case was filed in New York Supreme Court and not the date of removal is used."); 800-Flowers, Inc. v. Intercontinental Florist, Inc. , 860 F.Supp. 128, 133 n.1 (S.D.N.Y. 1994) ("Where a state action is subsequently removed to federal court, for the purposes of the First-to-File Rule, the state court filing date is the relevant benchmark." (quotation marks and citation omitted)); Mfrs. Hanover Tr. Co. v. Palmer Corp. , 798 F.Supp. 161, 166 (S.D.N.Y. 1992) ("My research has not uncovered a Second Circuit case that directly addresses this issue. Outside this Circuit, however, there is ample authority for the proposition that the state court filing date is the relevant benchmark.").
Here, Defendant's EDPA Action was filed on June 8, 2017. (Dkt. 8-6). However, Plaintiff's NYS Action was filed on May 4, 2017. (See Dkt. 1-1 at 1-6; Dkt. 8-7 at 15 (stating the same)); see generally CPLR 304(a) ("An action is commenced by filing a summons and complaint or summons with notice in accordance with rule twenty-one hundred two of this chapter."). Accordingly, as between the instant lawsuit and the EDPA Action, this action is the first-filed matter for purposes of the first-to-file rule, and Defendant's request to transfer this action to the Eastern District of Pennsylvania is denied.
Therefore, for the foregoing reasons, Defendant's motion (Dkt. 8) is denied in its entirety.
III. Marist's Application for Permissive Intervention is Granted
A. Legal Standard
"A district court may grant a motion for permissive intervention if the application is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common.' " In re Holocaust Victim Assets Litig., 225 F.3d 191, 202 (2d Cir. 2000) (quoting Fed. R. Civ. P. 24(b)(1)(B) ). "The 'principal consideration' for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.' " Battle v. City of New York, No. 11 CIV. 3599, 2012 WL 112242, at *6 (S.D.N.Y. Jan. 12, 2012) (quoting U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978) ). "Additional parties always take additional time which may result in delay, but this does not mean that intervention should be denied. The rule requires the court to consider whether *394 intervention will unduly delay the adjudication." Ass'n of Conn. Lobbyists LLC v. Garfield, 241 F.R.D. 100, 102 (D. Conn. 2007) (quotation marks and citation omitted).
Additional relevant factors "include the nature and extent of the intervenors' interests," the degree to which those interests are "adequately represented by other parties," and "whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."
Diversified Grp., Inc. v. Daugerdas, 217 F.R.D. 152, 157 (S.D.N.Y. 2003) (quoting H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986) ). "The decision to grant permissive intervention is 'wholly discretionary with the trial court.' " Consumer Fin. Prot. Bureau v. Sprint Corp., 320 F.R.D. 358, 361 (S.D.N.Y. 2017) (quoting Brennan , 579 F.2d at 191 ).
B. Timeliness of the Motion
Here, Defendant's sole argument in opposition to Marist's request for permissive intervention is that the motion is untimely. (Dkt. 22 at 18-19). "The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." United States v. Yonkers Bd. of Educ. , 801 F.2d 593, 594-95 (2d Cir. 1986). In determining whether a motion to intervene is timely, a court should consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." In re Bank of N.Y. Derivative Litig. , 320 F.3d 291, 300 (2d Cir. 2003) (quotation marks and citation omitted).
At oral argument, Marist's counsel could not pinpoint exactly when Marist became aware of the possibility that Plaintiff would file the present action. However, counsel did not believe that Marist became aware of this action prior to the date that Plaintiff filed its complaint in New York State Supreme Court on May 4, 2017. Defendant speculates that Marist could have developed an awareness of this action before May 2017, based upon the fact that the same law firm represents Marist and Plaintiff. (Dkt. 22 at 13). Defendant offers no concrete support for this assertion. As such, the Court finds that Marist was on notice of Plaintiff's action for about five months before it decided to file a motion to intervene on October 2, 2017. (Dkt. 18). Although Marist does not provide any substantive explanation for this delay, the Court, nevertheless, finds Marist's motion to intervene as timely filed.
Although some courts have found comparable or even shorter filing delays as untimely, see, e.g., NAACP v. New York, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973) (four months); United States v. Yonkers Bd. of Educ., 801 F.2d 593 (2d Cir. 1986) (several months), the five-month delay at issue here does not require the Court to reject Marist's motion as untimely. See Rodriguez v. It's Just Lunch, Int'l, No. 07 CIV. 9227 (SHS), 2013 WL 1749590, at *3 (S.D.N.Y. Apr. 23, 2013) (noting that the applicant "filed his motion to intervene ... less than five months later," and that "[t]his brief delay does not violate Rule 24"); Arista Records, Inc. v. Dalaba Color Copy Ctr., Inc., No. 05-CV-3634 (DLI) (MDG), 2007 WL 749737, at *3 (E.D.N.Y. Mar. 7, 2007) ("In any case, [the applicant]'s motion to intervene is timely, as it was filed just five months after the complaint was filed, and before the commencement of discovery.");
*395 S.E.C. v. Credit Bancorp, Ltd., No. 99 CIV. 11395 (RWS), 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) ("[The applicant] filed his motion at least five months after learning of these proceedings, and approximately four months after retaining counsel.... This delay, however, was not so protracted as to render his motion untimely under all the circumstances.").
Although the passage of time must be considered by a court in determining the timeliness of the motion, "the mere lapse of time does not render a motion to intervene untimely." United States v. Int'l Bus. Machs. Corp., 62 F.R.D. 530, 541 (S.D.N.Y. 1974). Instead, "because timeliness is to be determined on a case by case basis, the [c]ourt's determination will be based upon all of the circumstances of this case." Berroyer v. United States, 282 F.R.D. 299, 303 (E.D.N.Y. 2012). Indeed, " '[i]t is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties.' " First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc. , No. 3:12-CV-1096 (JBA), 2014 WL 12573387, at *4 (D. Conn. June 17, 2014) (quoting Hartford Fire Ins. Co. v. Mitlof , 193 F.R.D. 154, 160 (S.D.N.Y. 2000) ).
Here, Plaintiff does not oppose this motion, and thus, does not assert that it will suffer any prejudice as a result of the five-month delay. Notably, although Defendant opposes Marist's motion, Defendant also does not argue that it will be prejudiced by this delay. Instead, Defendant characterizes the five-month passage of time as dilatory in and of itself. (See Dkt. 22 at 11-13, 18-19). "This argument, however, speaks to [Defendant]'s preference to avoid intervention in general and does not claim specifically that the timing of this motion has caused it prejudice. " Allco Fin. Ltd. v. Etsy, 300 F.R.D. 83, 86 (D. Conn. 2014) (emphasis added); see also First Mercury Ins. Co., 2014 WL 12573387, at *4 ("No party has claimed that [the applicant]'s intervention would prejudice it."). In addition, Marist did not wait until a critical juncture in this litigation before filing its motion. See D'Amato v. Deutsche Bank , 236 F.3d 78, 84 (2d Cir. 2001) (denying motion as untimely where it was filed "three days prior to the Fairness Hearing"); Drywall Tapers & Pointers of Greater N.Y., Local Union 1974 of I.B.P.A.T., AFL-CIO v. Bovis Lend Lease Interiors, Inc. , No. 05 CV 2746 (JG), 2007 WL 2778630, at *4 (E.D.N.Y. Sept. 18, 2007) (finding that the applicant "took no steps to intervene for five months, waiting instead until settlement was imminent"); In re Refco Inc. , No. 05-60006, 2006 WL 3409088, at *6 (S.D.N.Y. Nov. 16, 2006) ("[The a]ppellants were aware of the Adversary Proceeding for approximately five months but failed to request intervention until after the Settlement was announced and, by allowing [them] to intervene at such a late stage, the Bankruptcy Court would have caused undue delay."), aff'd , 505 F.3d 109 (2d Cir. 2007).
Defendant also relies upon the Second Circuit's decision in MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377 (2d Cir. 2006), where the court held that the applicant's five-month delay was untimely. Id. at 390-91. Again, in MasterCard , the applicant waited to file its motion "until the eve of the preliminary injunction hearing." Id. at 390. Similar dilatory tactics are not present here. In addition, the applicant in MasterCard had been "in contact with [the defendant] throughout the course of th[e] litigation." Id. The fact that the same law firm represents both Plaintiff and Marist has not gone unnoticed, but the record does not contain evidence to support Defendant's suggestion that Plaintiff and Marist have been cooperating throughout the course *396 of these proceedings, or, even if they have, to what extent this may have occurred.
Accordingly, in viewing the five-month delay against the surrounding circumstances, the Court finds that this motion was timely filed. Marist filed this motion just five months after the commencement of this action in New York State Supreme Court, four months after the removal of the NYS Action to federal court, and about three months after the filing of the amended complaint. "Given the leniency with which [courts in this Circuit have] treated the requirement of timeliness," Cook v. Pan Am. World Airways, Inc., 636 F.Supp. 693, 695 (S.D.N.Y. 1986) (no prejudice even though five-month delay was not adequately explained), this delay is not so protracted as to result in any real prejudice to Defendant, especially where no discovery has taken place. Rodriguez, 2013 WL 1749590, at *3 ; Arista Records, Inc., 2007 WL 749737, at *3 ; see Credit Bancorp, Ltd., 2000 WL 1170136, at *2 (noting that the five-month delay was not so protracted to render the motion untimely even though discovery had already progressed for "several months"); see also Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co., 226 F.R.D. 485, 488 (S.D.N.Y. 2005) ("[The applicant] moved to intervene within a few months of [the plaintiff]'s filing of the instant suit, and no substantive proceedings have yet taken place in the action."). Therefore, the Court rejects Defendant's argument that Marist's motion to intervene is untimely.
C. Common Questions of Law or Fact
Marist must also demonstrate that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "However, '[t]he words claim or defense [in permissive intervention] are not to be read in a technical sense, but only require some interest on the part of the applicant.' " Louis Berger Grp., Inc. v. State Bank of India, 802 F.Supp.2d 482, 488 (S.D.N.Y. 2011) (quoting Dow Jones & Co. v. U.S. Dep't of Justice, 161 F.R.D. 247, 254 (S.D.N.Y. 1995) ). Marist seeks to intervene as a plaintiff-intervenor to define its contractual relationship with Defendant, and claims that any previous "discussions [it] may have had with [Defendant] were terminated when [Plaintiff] became general contractor to the project and [Plaintiff] entered into the [S]ubcontract with [Defendant]." (Dkt. 18-5 at 4). Marist takes the position that any prior relationship it may have had with Defendant was terminated and subsumed by the Subcontract. (Dkt. 24 at 4). This assertion raises common questions of law and fact as to the scope of the responsibilities of the parties and Marist under the Subcontract, and what obligations, if any, the parties and Marist were required to discharge. See N. River Ins. Co. v. O & G Indus., Inc., 315 F.R.D. 1, 6 (D. Conn. 2016) ("The facts about which entities said what to whom, and when, [during settlement discussions,] are common facts-and the legal ramifications of the contract provisions are common questions of law."). Furthermore, both Marist's and Plaintiff's claims involve the interpretation of the rights and obligations of the parties within same contract. See Kirby v. Coastal Sales Assocs., Inc. , 199 F.R.D. 111, 119 (S.D.N.Y. 2001) ("There are common questions of law and fact in this case, as both [the plaintiff]'s and [the intervenor]'s claims are for breach of the same contracts.").
Therefore, the Court finds that Marist maintains a claim "that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).
*397 D. The Absence of Undue Delay or Prejudice and the Inadequacy of Representation
Notably absent from Defendant's submissions is any argument that the intervention requested would "unduly delay or prejudice the adjudication of the rights of the original parties." See Fed. R. Civ. P. 24(b)(3) ; Brennan, 579 F.2d at 191 ; Ass'n of Conn. Lobbyists LLC, 241 F.R.D. at 102. Indeed, the Court finds the reverse to be true. Given Marist's role in commencing the Project and engaging the services of various contractors towards its completion, Marist's intervention would "significantly contribute to full development of the underlying factual issues and to the just and equitable adjudication of the legal questions presented." Ass'n of Conn. Lobbyists LLC , 241 F.R.D. at 103 ; see Int'lDesign Concepts, LLC v. Saks Inc., 486 F.Supp.2d 229, 235 (S.D.N.Y. 2007) (same). Since Marist's proposed intervenor claim and several of Plaintiff's claims "arise from a single set of operative facts," Lopez v. Bell Sports, Inc. , No. 14-CV-2530 (SJF) (SIL), 2014 WL 6473533, at *2 (E.D.N.Y. Nov. 18, 2014) -namely, the scope of the contractual relationships between the parties in the performance of the Project-Marist's participation in this suit will "help to provide the Court with a full picture of the issues to be decided and will permit the issues to be fully and thoroughly evaluated in an efficient, just, and speedy manner." Schaghticoke Tribal Nation v. Norton, No. 3:06-CV-81 (PCD), 2006 WL 1752384, at *9 (D. Conn. June 14, 2006).
In addition, the Court questions whether Plaintiff would adequately represent Marist's interests in this matter. " 'Rule 24(b) does not list inadequacy of representation as one of the considerations for the court' in exercising its discretion under Rule 24(b) and although a court may consider it, 'it is clearly a minor factor at most.' " Allco Fin. Ltd. , 300 F.R.D. at 88 (quoting United States v. Columbia Pictures Indus., Inc. , 88 F.R.D. 186, 189 (S.D.N.Y. 1980) ). Plaintiff seeks to enforce the Subcontract against Defendant, but Marist seeks declaratory relief that it has no contractual or equitable obligations toward Defendant in relation to the Project. (See Dkt. 18-5 at 5). Although Plaintiff and Marist share a similar objective of defining the scope of their contractual and equitable relationships with Defendant, their ultimate interests are very different. Granite Builders, Inc. v. U.S. Dep't of Labor, No. CIV-86-509(E), 1987 WL 15822, at *3 (W.D.N.Y. Aug. 17, 1987) ("Inadequacy of representation may be shown when the intervenor's interests are different from those of the parties to the suit."); Olympus Corp. v. United States, 627 F.Supp. 911, 916 (E.D.N.Y. 1985) ("[S]ince [the intervenor] has raised different legal arguments to support the regulation, its interest may not be adequately represented...."), aff'd, 792 F.2d 315 (2d Cir. 1986), disapproved of on other grounds by K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ; Citizens for an Orderly Energy Policy, Inc. v. Suffolk County, 101 F.R.D. 497, 501-02 (E.D.N.Y. 1984) ("[I]t is clear that while [the] plaintiffs' and [the intervenor]'s interests are not adverse, they are different."); In re Oceana Int'l, Inc., 49 F.R.D. 329, 333 (S.D.N.Y. 1969) ("[T]here is some similarity in the issues facing both the [defendant] and [the intervenor], but the interests each seeks to protect are quite different.").
Therefore, the Court exercises its discretion in granting Marist's request for permissive intervention under Rule 24(b)(1)(B). Accordingly, the Court "need not determine whether intervention as of right under Rule 24(a) is warranted." Int'lDesign Concepts, LLC, 486 F.Supp.2d at 234 ; see *398 Gulf Underwriters Ins. Co. v. The Hurd Ins. Agency, No. CIV.A. 3:03-CV-1277(SR), 2004 WL 2935794, at *2 & n.3 (D. Conn. Dec. 16, 2004) (concluding that permissive intervention was warranted and determining that the "more difficult question" of intervention as a matter of right need not be addressed); State of New York v. Reilly, 143 F.R.D. 487, 490 (N.D.N.Y. 1992) ("Having granted the ... motions for permissive intervention, there is no need for the court to decide whether or not these applicants are entitled to intervention of right pursuant to Rule 24(a)(2).").
CONCLUSION
For the foregoing reasons, Defendant's motion to dismiss, stay, or transfer this action (Dkt. 8) is denied, and Marist's motion to intervene (Dkt. 18) is granted.
SO ORDERED.

The following facts are taken from Plaintiff's amended complaint unless otherwise specified. (Dkt. 7).

The matter was properly removed to federal court on the basis of diversity jurisdiction because Defendant has alleged an amount in controversy that exceeds $75,000 (Dkt. 1 at ¶¶ 5, 7); Colavito v. N.Y. Organ Donor Network, Inc. , 438 F.3d 214, 221 (2d Cir. 2006), Plaintiff is a citizen of New York for purposes of diversity (Dkt. 1 at ¶ 2; see Dkt. 1-1 at ¶ 1), and Defendant is a citizen of Pennsylvania for purposes of diversity (Dkt. 1 at ¶ 3; see Dkt. 1-1 at ¶ 2); Universal Licensing Corp. v. Paola del Lungo S.p.A. , 293 F.3d 579, 581 (2d Cir. 2002) ; see 28 U.S.C. § 1332(c)(1).

In any event, as will be discussed below, the Court also grants Marist's motion to intervene, and thus, the parties in the State Action will be identical to the parties in the instant matter as a result of this Decision and Order. See Pinnacle Ins. Sols., LLC v. Kolbe , No. CIV.A. 13-5969 (SDW), 2014 WL 1272212, at *4 (D.N.J. Mar. 27, 2014) ("As previously discussed, in light of the state court's recent granting of Integro's motion to intervene, the parties and issues involved in the state and federal proceedings are substantially similar.").